# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 11-22018-CIV-ROSENBAUM/SELTZER

ADAM BURDEN, LARRY RILEY,
VINCENT ROBINSON, TAMIKA MILLER,
TARA LAZIER, and GUITHELE
RUIZ-NICOLAS

    Plaintiffs,

v.

CITY OF OPA LOCKA,

    Defendant.

_____/

## ORDER

  This matter is before the Court upon Defendant City of Opa Locka's Motion for Summary Judgment [D.E. 106]. The Court has reviewed Defendant's Motion for Summary Judgment, all supporting and opposing filings, and the record in this case. For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion for Summary Judgment.

## *I. INTRODUCTION*

  This case arises out of the claims of six current and former employees of the City of Opa Locka, Florida ("City"). On February 22, 2012, Plaintiffs Adam Burden, Larry Riley, Vincent Robinson, Tamika Miller, Tara Lazier, and Guithele Ruiz-Nicolas filed their sixteen-count Fourth Amended Complaint alleging various violations of federal and Florida law committed by the City. D.E. 27. The Complaint can be subdivided into five categories: violations of 42 U.S.C. § 1983 (Counts I, III, V, IX, XI, and XV, filed by all Plaintiffs); violations of Florida's public-sector Whistle-blower's Act, Fla. Stat. §§ 112.3187-112.31895 (Counts II, IV, VI, X, XII, XVI, filed by all

Plaintiffs); violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612, *et seq.*

(Counts VII, filed by Robinson, and XIII, filed by Lazier); a failure-to-promote claim under Title VII

of the Civil Rights Act (Count VIII, filed by Robinson); and a failure-to-notice claim under the

Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166 (Count XIV, filed

by Lazier).  The six § 1983 claims were previously dismissed by the Honorable Jose  E. Martinez

on June 25, 2012, but the other ten counts survived. D.E. 97.

On July 9, 2012, Defendant properly[1] filed its Motion for Summary Judgment as to all claims

by all Plaintiffs and supported its Motion with a Statement of Material Facts and various affidavits

and exhibits.  D.E. 106-108.  Plaintiffs filed their Response in Opposition, along with the required

rebuttal Statement of Material facts and supporting documents.[2]  Thereafter, Defendant submitted

its Reply brief. The Motion is now ripe for consideration.

---

[1]In May 2012, Defendant originally filed separate motions for summary judgment against each Plaintiff individually, in violation of S.D. Fla. L.R. 7.1(c)(2).  Subsequently, the motions, associated statements of fact, Plaintiffs' responses, and Defendant's replies were all stricken from the docket *sua sponte*.  Defendant properly refiled a single Motion for Summary Judgment on July 9, 2012, supporting it with the same affidavits used earlier.  The importance of this point will be discussed below.

[2]Unfortunately, Plaintiffs' Response generally fails to comply with this Court's Local Rules.  Specifically, Plaintiffs rarely cite to specific evidence to support their position that material facts are in controversy.  Instead, Plaintiffs cite to irrelevant evidence or to depositions as a whole, leaving the Court to scour entire depositions to determine whether they include evidence of discreet points.  These problems, which are sufficient to warrant this Court's striking of Plaintiffs' Response under the Local Rules, significantly increased the burden on the Court in resolving this Motion.  The parties are cautioned that the Court will not hesitate in the future to strike or impose appropriate sanctions, or both, for filings that fail to comport with this Court's Local Rules.

-2-

## II. BACKGROUND

Plaintiffs are each current or former employees of the City of Opa Locka. Burden was formerly employed as Deputy Chief of Police for the Opa Locka Police Department ("OLPD"). Robinson, Lazier, and Riley were each formerly employed as police officers. Miller was at one time a "crime analyst" with the OLPD but is currently employed as the City's Director of Code Enforcement. Ruiz-Nicolas was formerly employed as the City's Director of Human Resources.

Confidential Inquiry

The Plaintiffs' whistle-blower claims are based on Plaintiffs' allegations of various incidents of mismanagement, misfeasance, malfeasance, or neglected duty within the OLPD or the City's management. Many of Plaintiffs' whistle-blower complaints stem from Plaintiffs' allegations that they were retaliated against for participating in a "Confidential Inquiry" initiated in January 2011.

After receiving various concerns and complaints about the OLPD, then-City Manager Clarance Patterson initiated the Confidential Inquiry to investigate the charges that had been levied against and within the OLPD. Patterson directed Assistant City Manager David Chiverton and Director of Human Resources (and current Plaintiff) Ruiz-Nicolas to conduct the actual investigation. Burden, Robinson, Lazier, and Miller were each interviewed as part of the Inquiry. Chiverton and Ruiz-Nicolas finished the Inquiry in February 2011 and provided a report to Patterson on March 7, 2011. The report itself does not name the contributors of information, nor does it levy accusations against any specific individual. As will be discussed below, however, some of the statements made by Plaintiffs to the Confidential Inquiry did directly or indirectly list concerns about specific individuals, particularly OLPD Chief Cheryl Cason.

<u>Statements to the Confidential Inquiry</u>

During Burden's interviews with the Inquiry, he expressed concerns that the OLPD was disorganized, its procedures were outdated, and discipline was inconsistently handled. Burden apparently attributed these problems to Cason's alleged poor administration.

In Robinson's interviews with the Inquiry, he asserted several direct complaints against Cason. He noted that Cason had told him to pay out of pocket for a traffic ticket that had been issued to former Mayor John Riley after Robinson had failed to "fix" the ticket under Cason's earlier instructions. He also commented that Cason's secretary had been digging around his office and may have removed files, that he had discovered Miller crying in Cason's office, that he was ordered to work on Christmas so that another officer could be with his family, and that Cason had failed to discipline and was protecting Officer Marcos Gonzalez despite numerous allegations of Gonzalez's abusive behavior.

Lazier claims protection for three statements she made to the Inquiry concerning inconsistent discipline and incompetence in the OLPD. Specifically, Lazier revealed that a Corporal Faulkner, who had fallen asleep on the night shift and was then transferred to day shift, was not otherwise punished for falling asleep on duty, while Lazier was ordered to replace him on the night shift; that an Officer Holborow drove two intoxicated women home in his personal car; and that an Officer Gonzalez was rude and should have been disciplined.

During the Confidential Inquiry, Miller made four statements concerning Cason's mismanagement for which she seeks protection. Specifically, Miller reported that two officers engaged in horseplay with a taser that resulted in medics being called, but that neither officer was disciplined by Cason; that Cason ordered an officer to drive his patrol car to purchase alcohol for

another officer's baby shower; that Cason ordered Miller to complete the work of another officer while Miller was at home on maternity leave; and that Cason refused to punish an officer who had stolen Miller's laptop computer.

<u>Cason's Suspension, Burden's Other Whistle-blower Statements, and Burden's Termination</u>

In February 2011, Cason was involved in a motor-vehicle accident while driving her City-issued vehicle. Cason apparently failed to report the accident, attempted to repair the damage, and ordered a patrol officer to prepare an "after-the-fact" incident report. When he learned what had happened, Patterson instructed Burden to gather information and obtain documents related to the accident and report back to him. Based on this incident, Patterson suspended Cason from February 18, 2011 through March 7, 2011. Burden's whistle-blower claim lists his participation in this investigation as an activity protected by the statute.

Additionally, while Cason was suspended, Burden served as Acting Chief of Police. In this role, Burden advised Patterson that the Federal Bureau of Investigation ("FBI") was investigating corruption in the City of Opa Locka. Burden decided to inform Patterson of the investigation because he did not want Patterson to be surprised by any arrests. This information is the basis of Burden's third whistle-blower claim.

After Cason returned to work following her suspension, she informed Patterson that she no longer had confidence in Burden as her second-in-command. As City Manager, Patterson was the final decision maker with regard to the employment of city officials. Based on Cason's recommendation, Patterson terminated Burden's employment on March 22, 2011.

<u>Ruiz-Nicolas's Whistle-Blower Statements</u>

In addition to her involvement in preparing the Confidential Inquiry report, Ruiz-Nicolas claims whistle-blower protection for three other statements she made. Specifically, she seeks protection for telling Patterson that the City was providing three employees with life-insurance benefits inconsistent with the City's standard benefits package; for advising Patterson that the Mayor had pressured her into extending the application period for police officers; and for informing Patterson that she had been instructed by the City's Civil Service Board ("CSB") to hire an individual she believed was unqualified for the position.

<u>Riley's Whistle-Blower Statements and Termination</u>

Riley did not participate in the Confidential Inquiry. Instead, Riley claims whistle-blower protection for three verbal statements that he made to City officials. Specifically, Riley seeks protection for letting Patterson know that he was investigating allegations of corruption levied against a City code-enforcement officer and that he believed that it was necessary to involve the FBI in the investigation. Further, after Burden was terminated, Riley began reporting directly to Cason. As part of his duties, he advised Cason of ongoing Internal Affairs investigations and about the FBI's corruption investigation. Riley seeks whistle-blower protection for these reports. Finally, Riley was instructed by Ruiz-Nicolas to permit the Mayor of Opa Locka's son to complete an application for police employment after the deadline had passed. Riley objected to Ruiz-Nicolas about making an exception for the Mayor's son, but he did not report the incident further.

After Burden was terminated, Cason requested that Patterson terminate Riley because of Riley's prior close relationship with Burden. Cason believed that because of his past connections with Burden, Riley would attempt to undermine Cason's authority. Accordingly, on Cason's

recommendation, Patterson terminated Riley on April 13, 2011.

Barrett Is Appointed Acting Police Chief Instead of Robinson

Following the termination of Burden, Cason sought to promote a new individual to the Deputy Police Chief position. While a search was conducted for a permanent replacement, Evelyn Barrett, an African-American woman who had worked with the City since 1981 was selected by Cason to be the Acting Deputy Chief of Police. Robinson, a Caucasian man who had been with the City since 1996, also sought the acting position but was rejected by Cason. Barrett filled the role of acting deputy from March 25, 2011, until January 14, 2012, when Antonio Sanchez was appointed to the Deputy Police Chief position on a permanent basis.

Permanent supervisory positions with the OLPD have a minimum educational requirement. Robinson meets this prerequisite, while Barrett does not. The parties disagree on whether the educational requirement applies to acting positions, however. The selection of Barrett over Robinson provides the basis of Robinson's Title VII claim.

Robinson's FMLA Leave and Termination

Based on a letter from Robinson's doctor, the City placed Robinson on medical leave pursuant to the FMLA. The City granted Robinson the statutory maximum twelve weeks of leave, extending from May 16, 2011, to August 15, 2011. The parties disagree, however, on whether Robinson returned to work as required at the expiration of his leave, and whether he was subsequently excused from work due to ongoing health concerns. Based on the assertion by Acting Chief Barrett that Robinson failed to return to work following his FMLA leave, she requested that

now-City Manager Bryan Finnie[3] terminate Robinson's employment.  Finnie terminated Robinson on August 25, 2011.

<u>Lazier's Internal Affairs Investigation, FMLA Leave, and Termination</u>

In April 2011, Lazier was working in the Internal Affairs Department of the OLPD, a restricted area open only to Internal Affairs personnel.  On or about April 20, 2011, Lazier permitted Defendant Miller access to the Internal Affairs' spaces, in violation of the orders governing Internal Affairs access, and an investigation was opened against her.  On or about July 7, 2011, Lazier was granted leave under the FMLA for work-related stress and anxiety.  Shortly thereafter, OLPD officers were sent to her home to retrieve her badge and firearm, but Lazier refused to turn over the weapon at that time.  A few days later, Lazier herself returned the weapon to a civilian City employee.  Additionally, while still on FMLA leave, Lazier appeared on an August 16, 2011, television interview and criticized the way she had been treated by the OLPD.  Lazier had not sought prior approval for the appearance from any City or OLPD supervisor.

Based on these incidents, Barrett, who was serving as acting Chief of Police while Cason was on medical leave, recommended that Finnie terminate Lazier's employment.  After Finnie reviewed Lazier's file, he terminated her effective August 22, 2011, while Lazier was still on FMLA leave. In Finnie's termination letter, dated August 25, 2011, he noted that Lazier's health benefits would be terminated August 31, 2011, but that her benefits may be continued through COBRA.

<u>Ruiz-Nicolas's Termination</u>

Shortly after Finnie began his tenure as City Manager, he learned that Ruiz-Nicolas had failed to keep confidential an investigation of theft by a City employee.  Specifically, Ruiz-Nicolas had

_____

[3]Finnie replaced Patterson as City Manager in June 2011.

apparently revealed to the suspect the identity of the accuser.  According to Finnie, such a breach of confidentiality was unacceptable behavior for the City's Human Resources Director.  Finnie terminated Ruiz-Nicolas's employment with the City on June 28, 2011.

### III. STANDARD OF REVIEW

#### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

On a motion for summary judgment, the Court views the evidence, including all reasonable inferences drawn from it, in the light most favorable to the non-moving party and resolves all reasonable doubts against the movant. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008); *Johnson v. City of Mobile*, 321 F. App'x 826, 830 (11th Cir. 2009).  The Court does not weigh conflicting evidence. *Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007), *reh'g and reh'g en banc denied*, 254 F. App'x 803 (11th Cir. 2007).  Nor does the Court determine the credibility of witnesses. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citation omitted).  "Cases in which the underlying issue is one of motivation, intent, or some other subjective fact are particularly inappropriate for summary judgment, as are those in which the issues turn on the credibility of the affiants." *Ala. Farm Bureau Mut. Cas. Co., Inc. v. Am. Fid. Life Ins.*

*Co.*, 606 F.2d 602, 609 (5th Cir. 1979) (quoting *Slavin v. Curry*, 574 F.2d 1256, 1267 (5th Cir. 1978).  Upon discovering a genuine material dispute, the Court must deny summary judgment and proceed to trial.  *Jones*, 683 F.3d at 1292.

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'"  *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'"  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts suggesting that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

Local Rule 56.1, S.D. Fla., further factors into this Court's consideration of a motion for summary judgment.  Under Local Rule 56.1, a party moving or opposing summary judgment must submit a "statement of the material facts as to which it is contended that there does not exist a genuine issue to be tried or there does exist a genuine issue to be tried, respectively."  S.D. Fla. L.R. 56.1(a).  The rules require these statements be supported by "specific references" to evidence on the record.  S.D. Fla. L.R. 56.1(a)(2).  The Local Rules expressly caution, "[a]ll material facts set forth in the movant's statement filed and supported as required above will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's

statement is supported by evidence in the record." S.D. Fla. L.R. 56.1(b). But even where an opposing party neglects to submit any alleged material facts in controversy, the court must still satisfy itself that all the evidence on the record supports the uncontroverted material facts that the movant has proposed. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## B. Status of Defendant's Affidavits

Before this Court can address the merits of the summary-judgment motion, it must first resolve an issue concerning the admissibility of Defendant's supporting affidavits. Plaintiffs base a great deal of their opposition to summary judgment on their suggestion that all of the affidavits submitted by Defendant in support of its Motion should be excluded because of a failure to disclose those affidavits as requested during discovery. D.E. 114 at 3-5; *see also* Fed. R. Civ. P. 56(c)(2) (allowing a party to object to the admissibility of evidence cited in a summary judgment motion). Plaintiffs assert that they requested "[a]ny written or recorded statements, or reports or affidavits of any person related to the subject matter of this action" in an interrogatory and that Defendant did not provide any affidavits in its initial response. Plaintiffs further contend that Defendant violated Rule 26(e), Fed. R. Civ. P., by failing to supplement its response with the affidavits it eventually used to support its motion. *Id.* Defendant's affidavits were executed on May 18, 2012 (Patterson), May 23, 2012 (Cason, Barrett, Finnie, and Luznilda Natal), and June 5, 2012 (Finnie). D.E. 108. Discovery in this matter closed on May 25, 2012. D.E. 39.

Defendant responds to Plaintiffs' contentions by noting that it objected to the original interrogatory, and Plaintiffs never sought to enforce their discovery request with this Court; that each

-11-

of the affiants had been identified in the exchange of witness lists; and that each of the affidavits were executed only a few days before Defendant filed its original summary judgment motion on May 29, 2012. D.E. 118, ¶ 118.

As noted, "[t]he party moving for summary judgment 'bears the initial responsibility of informing the district court of the basis for its motion." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1314-15 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 323). Affidavits supporting a summary judgment motion must be "based on personal knowledge and must set forth facts that would be admissible at trial." *Id.* at 1315 (citing *Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999); *see also* Fed. R. Civ. P. 56(c)(4). If a party fails to comply with its discovery obligations under Rule 26(a) or 26(e), the information or witness testimony at issue may be excluded from trial under Rule 37(c)(1). Fed. R. Civ. P. 37(c)(1). Consequently a court has the discretion to strike affidavits on summary judgment that provide information that would be inadmissible at trial due to Rule 37(c)(1) sanctions. *See Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006). If the failure to comply is harmless or is substantially justified, however, then the testimony or information may be admitted by the court. *See* Fed. R. Civ. P. 37(c)(1).

Although this Court has found no Eleventh Circuit cases analyzing the failure to provide affidavits during discovery as a basis for Rule 37(c)(1) sanctions, guidance does exist related to the failure to disclose a witness in a timely manner. When deciding whether to exclude a witness under Rule 37(c)(1), courts consider "(1) the importance of the testimony; (2) the reason for the appellant's failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353

(11th Cir. 2004). Important testimony should not be excluded absent some showing of prejudice. *See Murphy v. Magnolia Elec. Power Ass'n*, 639 F.2d 232, 235 (5th Cir. Mar. 1981) (finding an abuse of discretion when trial judge excluded "essential" testimony in the absence of any prejudice).

In this case, obviously, the affidavits in question are important. Defendant rests large portions of its Motion for Summary Judgment on them, and their contents are central to the issues presented in this case. *Id.*

As for Defendant's reasons for failing to provide Plaintiffs with the affidavits during discovery and the issue of prejudice, the Court first notes that Defendant objected to the discovery request and Plaintiffs chose not to pursue it. Thus, Plaintiffs appear to have waived their right to demand better responses to the discovery request at issue.

But even assuming, *arguendo*, that Defendant lacked a valid objection and should have produced the affidavits in response to the production request, at worst, the failure to provide them was harmless. Perhaps most significantly, the identities of four of the five affiants (Cason, Patterson, Finnie, and Natal) were contained not only in Defendant's Rule 26(a)(3) witness list [D.E. 32] provided on March 15, 2012, but were also listed in Plaintiffs' own Rule 26(a)(3) witness list [D.E. 34] as witnesses *Plaintiffs* intended to call. To the extent that Plaintiffs knew two months prior to the execution of the affidavits and more than two months before the close of discovery that these four individuals would be witnesses called by the Defense, Plaintiffs cannot credibly claim that they did not have an opportunity to depose these individuals as to their "personal knowledge and other biases." D.E. 114 at 4. And, to the extent that Plaintiffs themselves intended to call these witnesses during trial, any claims of surprise that Defendant would rely upon their testimony in a summary judgment motion are entirely without merit. Accordingly, given the importance of the affidavits and

-13-

the lack of any demonstrable prejudice, this Court will include the affidavits of Cason, Patterson, Finnie, and Natal in its consideration of the Motion for Summary Judgment.

Only slightly more problematic is the affidavit of Evelyn Barrett. Barrett was not included in the parties' original or supplemental witness lists. *See* D.E. 32; D.E. 34; D.E. 36. Rather, the first indication in the record that Barrett would provide testimony appeared when Defendant filed its original motions for summary judgment on May 29, 2012. Nevertheless, Plaintiffs are unable to demonstrate that the failure to provide them with Barrett's affidavit was not harmless. First, Plaintiffs' Fourth Amended Complaint[4] [D.E. 27] references Barrett as the individual who was promoted over Robinson in his Title VII claim. D.E. 27, ¶ 116. Second, Plaintiffs' Complaint mentions Barrett as among the individuals who allegedly requested Miller to sign supposedly invalid disciplinary form in retaliation for participating in the Confidential Inquiry. D.E. 27, ¶¶ 129, 132-33. Consequently, Plaintiffs' own Complaint suggests that Barrett may have possessed relevant information and thus may have been called upon by Defendant to provide testimony.

Moreover, the delay caused by the striking of the original summary judgment motions provided Plaintiffs with ample notice and time to raise separately with the Court the issue of Defendant's failure to provide the affidavits during discovery. Assuming[5] that Defendant improperly (or even properly) objected to the affidavit interrogatory under Rule 33(b)(4), Fed. R. Civ. P., Plaintiffs could have sought to resolve the issue then by filing a motion to compel or seeking other appropriate relief from this Court. They did not do so. On the other hand, if Defendant objected in

---

[4]For convenience, this Order refers to the Fourth Amended Complaint as the "Complaint."

[5]The Court is required to make this assumption because neither party has provided actual copies of the interrogatory or objection at issue here.

such a way that would have led Plaintiffs to reasonably believe the existence of future affidavits was not possible, Plaintiffs did receive the Barrett affidavit on May 29. In Plaintiffs' response to the original summary judgment motion, they make the same attack that they make here on all the affidavits. The first of those responses was filed on June 8. With extensions, Plaintiffs' Response to the current Motion for Summary Judgment was filed on August 1. In the intervening two months, instead of seeking relief over the existence of an affidavit that they had become aware of, Plaintiffs chose to provide a nearly verbatim renewal of the same objections they raised to the original motions.

To put it another way, Defendant could have theoretically complied with the interrogatory and provided Plaintiffs with the Barrett affidavit on the same day it was executed, May 23. Plaintiffs contend that they could have conducted a deposition of Barrett (and the other affiants) in the *two days* between the execution and the close of discovery on May 25, but because they did not receive the affidavits until May 29, Plaintiffs were prejudiced by not being able to depose the affiants. Yet, in the span of *two months* between learning of the Barrett affidavit on May 29 and filing their Response on August 1, Plaintiffs did not seek to reopen discovery or take depositions of any affiant. Accordingly, this Court is unconvinced that Plaintiffs, who have had two months' notice of the Barrett affidavit and have failed to act on it, would be unfairly prejudiced by consideration of the affidavit in the summary judgment motion.

Relatedly, Plaintiffs also object to various statements in Defendant's affidavits as being based on external documents not in the record. *See, e.g.*, D.E. 115, ¶¶ 101, 102, 104, 105. Rule 56(c)(4) requires that affidavits rely on "personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.

R. Civ. P. 56(c)(4).  Other than blanketly complaining that various statements make reference to or assert facts based on external documents, Plaintiffs do not specifically address how the statements at issue are not, in fact, based on personal knowledge, do not elaborate under what theory they would be inadmissible at trial, and do not even suggest what specific or generic types of documents are actually involved.[6]  *See, e.g.*, D.E. 115, ¶¶ 101, 102, 104, 105.  Therefore, to the extent that the affidavit statements comply with Rule 56(c)(4), they will be considered by the Court in disposing of the summary-judgment motion.

In conclusion, Plaintiffs have failed to demonstrate any reason that the affidavits submitted by Defendant should be disregarded by the Court.  To the extent, therefore, that Plaintiffs' objections to Defendant's various statements of material facts relied solely on excluding the affidavits, Plaintiffs will be deemed to have admitted those facts.  S.D. Fla. L.R. 56.1(b).  However, the Court must still satisfy itself that all the evidence on the record supports the uncontroverted material facts that Defendant has proposed.  *Id.*; *Reese*, 527 F.3d at 1268-69.

### *IV. ANALYSIS*

#### A.  Florida Whistle-Blower's Act Claims

Florida's Whistle-blower's Act ("FWA" or "the Act") was enacted with the intent to prevent retaliatory action against employees and persons who disclose government wrongdoing to the appropriate officials.  *See* Fla. Stat. § 112.3187(2).  The Act sets forth several specific requirements regarding the types of disclosures protected, to whom those disclosures must be made, who is

---

[6]For example, Plaintiffs complain about Finnie's statement that "Lazier's decision to apply for and accept FMLA leave was never a part of my considerations in deciding to terminate her," in his affidavit.  D.E. 115, ¶ 101; D.E. 108-19, ¶ 15.  There is nothing objectionable about this statement under Rule 56(c)(4) or any other rule.  To the contrary, it is a statement of personal knowledge, as contemplated by Rule 56(c)(4).

protected, and the manner in which a remedy must be sought. *Id.* § 112.3187(5)-(8). Under Florida law, before a local public employee can file a Whistle-blower's Act lawsuit, that employee must "first exhaust all administrative remedies" under §112.3187(8)(b), Fla. Stat. *Williams v. City of Miami*, 87 So. 3d 91, 92 (Fla. 3d DCA 2012). Local government authorities, including any municipal entity, may establish an administrative procedure for handling FWA complaints. Fla. Stat. § 112.3187(8)(b). If a local governmental authority has not established an administrative procedure or otherwise contracted with the Florida Division of Administrative Hearings to hear such complaints, local government employees may bring suit within 180 days of suffering a prohibited action. *Id.* Other individuals protected by the Act are required to exhaust "all available contractual or administrative remedies" before bringing suit. Fla. Stat. § 112.3187(8)(c).

If a plaintiff complies with the exhaustion requirements, the inquiry then proceeds to the substance of the FWA claims. In a motion for summary judgment under the Act, a court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003); *see also Rutledge v. SunTrust Bank*, 262 F. App'x 956, 957-58 (11th Cir. 2008) (applying framework to summary judgment under Florida's private-sector whistle-blower's statute). Thus, a plaintiff alleging a violation of the FWA has the initial burden to establish a prima facie case that (1) he or she engaged in a protected activity, (2) he or she suffered an adverse employment action, and (3) a causal link exists between the two events. *Rice-Lamar*, 853 So. 2d at 1132. If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate reason for the employment action. *Id.* at 1132-33. If a legitimate reason is set forth, the burden shifts back to the plaintiff to show that the employer's reason was pretextual. *Id.*

Under the relevant portions of the FWA, a protected activity must disclose "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds . . . or gross neglect of duty committed by an employee or agent of an agency." Fla. Stat. § 112.3187(5)(b). The Act defines "[g]ross mismanagement" to mean "a continuous pattern of managerial abuses, wrongful or arbitrary and capricious actions, or fraudulent or criminal conduct which may have a substantial adverse economic impact." Fla. Stat. § 112.3187(3)(e). Neither malfeasance nor misfeasance is defined in the statute, but Florida courts have construed malfeasance to mean "the doing of an act which a person ought not do at all" and misfeasance to be "the improper doing of an act which a person might lawfully do." *Rosa v. Dep't of Children & Families*, 915 So. 2d 210, 212 (Fla. 1st DCA 2005) (citing *Irven v. Dep't of Health & Human Servs.*, 790 So. 2d 403, 405 (Fla. 2001)). For purposes of summary judgment, under Florida law, if the content of a disclosure could create reasonable inferences of gross mismanagement, malfeasance, or misfeasance, the issue of whether it has done so presents a factual matter for the jury. *See id.*

The disclosure itself must be made by employees "on their own initiative in a written or signed complaint" or when "requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity." Fla. Stat. § 112.3187(7). In the local-government context, such disclosures must be made "to a chief executive officer as defined in [section] 447.203(9) or other appropriate local official." Fla. Stat. § 112.3187(6).

**1. Initial Procedural Issues**

a. Exhaustion of Administrative Remedies: Robinson, Lazier, and Miller

Defendant first alleges that Plaintiffs Robinson, Lazier, and Miller have each failed to exhaust their administrative remedies as required under §112.3187(8)(c), by not appealing to Opa

Locka's Civil Service Board ("CSB").  D.E. 106 at 3.  Plaintiffs do not dispute the fact that Robinson, Lazier, and Miller never appealed to the CSB. D.E. 107, ¶ 168; D.E. 115, ¶ 168.  Instead, Plaintiffs suggest that they are covered by § 112.3187(8)(b), not § 112.3187(8)(c).  Instead, they argue that the CSB does not meet the requirements of §112.3187(8)(b) and that Opa Locka has not established any other qualified administrative procedure to hear whistle-blower claims, thus allowing Plaintiffs to proceed directly to court.  D.E.114 at 8-9.

To the extent that Defendant relies on paragraph (c) of §112.3187(8) to impose an exhaustion requirement on Plaintiffs, the Court disagrees.  The plain language of § 112.3187(8) identifies three distinct classes of persons who may file a whistle-blower's complaint: state employees (addressed by paragraph (a)), local employees (addressed by paragraph (b)), and "other persons" (addressed by paragraph (c)).  *See Univ. of Cent. Fla. Bd. of Trustees v. Turkiewicz*, 21 So. 3d 141, 143-44 & n.3 (Fla. 5th DCA 2009); *see also* Fla. Stat. § 112.3187(8)(c) ("Any *other* person protected by this section . . . ." (emphasis added)).  Robinson, Lazier, and Miller are or were municipal employees of the City of Opa Locka, and thus squarely are covered under § 112.3187(8)(b). D.E. 107, ¶ 1; D.E. 115, ¶ 1; Fla. Stat. § 112.3187(8)(b) ("For the purpose of this paragraph, the term 'local governmental authority' includes any . . . municipal entity . . . .").  Because they are covered by paragraph (b), they do not fall into the catch-all category of "other person[s]" addressed by paragraph (c).[7]  *See, e.g.*, *United States. v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003); *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 948 (11th Cir. 2001).  Presumably for these reasons, the cases relied on by Defendant clearly apply the terms of paragraph (b) to the local employee plaintiffs.  *Williams*, 87 So. 3d at 92; *Browne v. City of Miami*, 948 So. 2d 792, 793-94 (Fla. 3d DCA 2006).

---

[7]Otherwise, paragraph (b) would be surplusage.

-19-

Therefore, Robinson, Lazier, and Miller are bound only by the exhaustion requirements under paragraph (b).

The question remains, though, whether Opa Locka had established a qualified administrative procedure for handling whistle-blower complaints via the CSB.  Any administrative procedure for handling whistle-blower complaints must be created by ordinance and must provide for the complaint to be heard by a panel of impartial persons, properly appointed by the local authority, who are empowered to "make findings of fact and conclusions of law for a final decision by the local governmental authority."  Fla. Stat. § 112.3187(8)(b); *see also City of Miami v. Del Rio*, 723 So. 2d 299, 300-01 (Fla. 3d DCA 1998).  Whether a municipality's administrative procedure suffices under the Act presents a question of law.  *Dinehart v. Town of Palm Beach*, 728 So. 2d 360, 361 (Fla. 4th DCA 1999).

In contesting the adequacy of the CSB, Plaintiffs' argument rests on the proposition that the CSB was not specifically established to handle whistle-blower complaints. D.E. 114 at 9.  Plaintiffs do not contend that the CSB was not created by ordinance, or that it is not composed of properly appointed, impartial persons empowered to make findings of fact and conclusions of law for a final decision by local authorities.  *See id.*  Instead, they rely on *Del Rio*, which found the City of Miami's Civil Service Board adequate for the preceding reasons *and* because it was "authorized by section 40-128, Miami, Fla. Code (formerly section 40-103), to handle whistle-blower complaints." *Del Rio*, 723 So. 2d at 300-01.

The Court agrees with Plaintiffs that the ordinance creating the CSB does not sufficiently establish a qualified administrative procedure for handling whistle-blower complaints under § 112.3187(8)(b).  Robinson, Lazier, and Miller were thus not required to exhaust remedies at the CSB

before bringing this lawsuit.

The Opa Locka City Ordinance establishing the CSB invests it with the power to:

> . . . .
>
> (4) Hear appeals in case any officer or employee in the classified service is suspended, reduced or removed, and report in writing to the chief administrative officer of the city its findings and recommendations;
>
> . . . .

Opa Locka, Fla., Code of Ordinances pt. I, art. XIII, § 183(4).  An appeal under this section must be lodged with the CSB within five days after receiving written notice of the suspension, reduction in pay or class, or removal.  *Id.* § 192.  Neither party has identified any other applicable provision of the City's code.[8]

The FWA requires that a local government's administrative procedure be established by ordinance to hear whistle-blower complaints, *i.e.*, complaints that a local government entity has dismissed, disciplined, or taken "any other adverse personnel action" against a local employee in retaliation for disclosing information protected by the FWA.  Fla. Stat. § 112.3187(8)(b); *see* Fla. Stat. § 112.3187(4)(b).  "Adverse personnel action" includes "discharge, suspension, transfer, or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or *any other adverse action* taken against an employee within the terms and conditions of employment." Fla. Stat. § 112.3187(3)(c) (emphasis added).  The Act also gives employees sixty days to file an administrative complaint.  Fla. Stat. § 112.3187(8)(b).

---

[8]The City adopted and incorporated verbatim the Florida Whistle-blower's Act into its city code.  Opa Locka, Fla., Code of Ordinances pt. II, ch. 2, art. III, div. 1, § 2-99.  Beyond the verbatim incorporation, the Court can find nothing in the City's code that implements the terms of the Act into the operating procedures of the CSB or any other city board.

The CSB's authorizing ordinance falls short of the requirements contemplated in the FWA. More specifically, the CSB is empowered to hear appeals only in cases of suspension, reduction in pay or class, or removal.  While each of these is an adverse action covered by the statute, the FWA describes many more types of adverse action that apparently would not be appealable to the CSB. Further, a CSB appeal must be filed within five days, whereas an administrative complaint under the FWA can be filed within sixty days.  Because the FWA is a remedial statute that "should be construed liberally in favor of granting access to the remedy," *Hutchison v. Prudential Ins. Co. of Am., Inc.*, 645 So. 2d 1047, 1049 (Fla. 3d DCA 1994) (citation omitted), the Court finds the CSB's mandate is too narrow to satisfy the requirements of the FWA.

The administrative board found adequate in *Del Rio* is readily distinguishable from CSB in this case.  The Miami city ordinance at issue in *Del Rio* empowered that board to hear complaints raised by "[a]ny employee who is aggrieved by reason of what he/she considers a violation of this article to his/her detriment or who has a grievance concerning his/her employment under this article."  *Del Rio*, 723 So. 2d at 301 n.3.  The Miami board's broad mandate easily encompasses all the adverse actions contemplated by the FWA, while Opa Locka's CSB's limited mandate of suspension, reduction, and removal appeals does not.

b. Appropriate Local Officials Under the FWA

Defendant also attacks statements made to the Confidential Inquiry as not being covered by the FWA because the statements made in the course of the Inquiry were made to Human Resources Director Ruiz-Nicolas and Assistant City Manager Chiverton and not to City Manager Patterson, the chief executive officer of the city.  D.E. 106 at 6.  Plaintiffs do not dispute that the Inquiry statements were not made directly to Patterson.  They respond instead by claiming that Ruiz-Nicolas and

Chiverton are appropriate local officials to whom protected disclosures can be directed. The Court finds that Ruiz-Nicolas and Chiverton are indeed appropriate officials under the FWA to whom protected disclosures could have been addressed.

The FWA requires eligible information concerning a local government entity "be disclosed to a chief executive officer as defined in [Fla. Stat.] § 447.203(9) *or other appropriate local official*" in order to qualify as a protected disclosure. Fla. Stat. § 112.3187(6) (emphasis added). Although this Court cannot find any Florida case law analyzing who qualifies as an "appropriate local official," the Florida Attorney General's Office has issued several advisory opinions on the topic. In those opinions, the Florida Attorney General has found a transit authority's board of directors, a county's inspector general, and a town's ethics commission to qualify as "other appropriate local official[s]" under the Act. Op. Att'y Gen. Fla. 2012-20 (2012); Op. Att'y Gen. Fla. 99-07 (1999); Op. Att'y Gen. Fla. 96-40 (1996). Significantly, the Attorney General has found individuals to be "appropriate local officials" where they are empowered to investigate complaints and make reports or recommend corrective action. *See* Op. Att'y Gen. Fla. 99-07. A federal court construing Florida law has similarly concluded that the supervisor of a local employee qualifies as an appropriate local official. *Saunders v. Hunter*, 980 F. Supp. 1236, 1246 (M.D. Fla. 1997). Finally, the Attorney General's opinions note that the confidentiality provisions of the Whistle-blower's Act permit complaints to be shared with an official's staff and still retain their confidentiality. Op. Att'y Gen. Fla. 2012-20; Fla. Stat. §112.3188(1).

Defendant cites two cases for the proposition that Ruiz-Nicolas and Chiverton should not be considered appropriate officials. The first case is not really instructive, as the court concluded in one sentence that the personnel did not fall within the scope of the statute without identifying who those

individuals were or analyzing the individuals' positions under the FWA. *See Cummins v. Lake County Bd. of County Comm'rs*, 671 So. 2d 893, 893 (Fla. 5th DCA 1996). Nor is Defendant's second case on point, as it did not concern a local government entity (to which the appropriate local official language applies), but rather an independent state Medicaid contractor. *Kelder v. ACT Corp.*, 650 So. 2d 647, 648 (Fla. 5th DCA 1995).

In light of the relevant legal authorities and the liberal construction afforded to the FWA, the Court finds that Ruiz-Nicolas and Chiverton qualify as "other appropriate local officials." It is undisputed that City Manager Patterson directed and empowered Ruiz-Nicolas and Chiverton to investigate concerns in the OLPD and to issue a report on their findings. D.E. 107, ¶¶ 2-3. Given the breadth of similarly empowered, non-chief-executive individuals who were deemed to qualify as other appropriate local officials according to the Florida Attorney General, the Court finds that Ruiz-Nicolas and Chiverton were qualified to receive protected disclosures under the FWA during the Confidential Inquiry.

**2. Burden's FWA Claims**

a. Protected Activities

Plaintiff Burden asserts that he engaged in three protected activities under the FWA: (i) giving information to the Confidential Inquiry; (ii) making statements to Patterson concerning Chief Cason's car accident; and (iii) advising Patterson of a secret FBI investigation.[9] D.E. 27, ¶¶ 29, 48. Beginning with the last statement, the FWA requires a disclosure of a "violation or suspected

---

[9]Plaintiffs' Complaint lists only the FBI issue as a disclosure under Plaintiff Riley's FWA Count, but the Complaint mentions Burden and Riley together, and Defendant has treated Burden's statements concerning the FBI investigation as part of Burden's FWA claim as well. Therefore, the Court will treat the FBI claim as one of the bases for Burden's FWA claim.

violation of . . . law, rule, or regulation" or an "act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds . . . or gross neglect of duty."  Fla. Stat. § 112.3187(5).  Merely disclosing the existence of a law-enforcement investigation to a City official is not the same as reporting a violation of law and is therefore not a protected activity under the FWA.  Because the statements about the existence of the FBI investigation do not constitute protected activity, Burden cannot establish a prima facie whistle-blower case on this basis.  Consequently, Defendant is entitled summary judgment on any whistle-blower claim arising from Burden's statement concerning the FBI investigation.

Burden's other two statements, however, do establish a prima facie case for a protected activity under the FWA.  The FWA protects individuals who make a disclosure of eligible information when "requested to participate in an investigation, hearing, or other inquiry conducted by any agency."[10]  Fla. Stat. § 112.3187(7).  Contrary to Defendant's suggestion, disclosures made pursuant to an investigation or inquiry need not be made via written and signed complaints or on the initiative of the one disclosing.

It is undisputed by the parties that Patterson requested that Burden investigate Chief Cason's accident, and in response, Burden provided Patterson with a repair invoice and a rental-car invoice.  D.E. 107, ¶¶ 11-13; D.E. 115, ¶¶ 11-13.  Under *Rosa*, a reasonable jury could draw the inference that these invoices represented misfeasance or malfeasance on the part of Chief Cason.  As such, a triable issue of fact exists as to whether providing these invoices amounts to a protected activity, and

---

[10]Under the FWA, an "agency" is defined to include, among other things, "any official" or "officer." § 112.3187(3)(a). Patterson is therefore an "agency" for the purposes of the FWA.

-25-

summary judgment would be inappropriate. *See* 915 So. 2d at 212. For the purposes of the burden-shifting analysis, this suffices to establish a prima facie case for protected activity.

Finally, during Burden's participation in the Confidential Inquiry, he made the following undisputed[11] assertions: the department was completely disorganized, the department's policies and procedures were outdated, and discipline was delivered in an inconsistent manner. D.E. 107, ¶ 9; D.E. 115, ¶ 9. Burden also described Cason as a poor administrator. Under *Rosa*, a reasonable jury could draw the inference that Burden's statements to the Confidential Inquiry were evidence of a pattern of managerial abuses that amounted to gross mismanagement by Cason. Therefore, a triable issue of fact exists as to whether these statements amounted to a protected activity, and summary judgment would be inappropriate. *See* 915 So. 2d at 212. For the purposes of the burden-shifting analysis, this is sufficient to establish a prima facie case for protected activity.

b. Causation [12]

To establish a prima facie whistle-blower's case, a plaintiff also needs to show a causal link between the protected activity and the adverse action. *Rice-Lamar*, 853 So. 2d at 1132-33. To establish causation, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Fla. Dep't of Children & Families v. Shapiro*, 68 So. 3d 298, 306 (Fla.

---

[11]Plaintiffs agree with Defendant's characterization of Burden's statements to the Confidential Inquiry, but also add that Burden told the Inquiry about the incident where Cason improperly ordered Robinson to pay a traffic ticket. Plaintiffs cite to "App 2 P76" in support of this proposition. However, nothing on page 76 of Appendix 2 deals with the traffic-ticket incident or its disclosure during the Confidential Inquiry. A search of Plaintiffs' 196-page Appendix finds the traffic-ticket incident discussed on pages 94-95 and pages 134-35. D.E. 116-2 at 94-95, 134-35. But in his deposition, Burden expressly states that he never reported the traffic-ticket incident to anyone, including the Confidential Inquiry. D.E. 116-2 at 135:15.

[12]Neither party disputes that Burden suffered an adverse action, *i.e.*, being terminated. D.E. 107, ¶ 116; D.E. 115, ¶ 116.

4th DCA 2011) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  Plaintiffs can establish prima facie causation in a whistle-blower's suit by demonstrating close temporal proximity — that, is, showing that the decision maker was aware of the protected conduct at the time of the adverse action — or by way of a "cat's paw" theory where "the decision maker acts in accordance with the harasser's decision when the decision maker fails to conduct an independent investigation, and instead rubber stamps the recommendations of the harasser." *Id.* at 306 (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998).

Regarding both protected activities, Burden has established a prima facie case for causation. First, with respect to Cason's auto accident, Burden made his protected disclosure sometime between February 15 and February 18, 2011.  D.E. 108-1, ¶¶ 16-17; D.E. 108-1, ¶¶ 14-16.  Cason was suspended from February 18 to March 7, 2011. D.E. 108-1, ¶¶ 14-16.  It is not clear, however, if Cason returned to work on March 7 or March 20, 2011.  *Compare id.* (noting date Cason was cleared, but not when she returned) *with* D.E. 27, ¶ 25 (alleging Cason returned on or about March 20).  Nevertheless, on March 21, 2011, Cason sent Patterson a memorandum requesting Burden's termination.  D.E. 108-3, ¶ 112.  Patterson terminated Burden the next day without conducting an independent investigation of Cason's accusations. D.E. 27, ¶ 27; D.E. 108-1, ¶¶ 9-11.  Thus, Burden was terminated a little more than a month after his alleged protected activity regarding Cason's car accident.  This by itself suffices to establish prima facie causation by temporal proximity. *Padron v. BellSouth Telecomms., Inc.*, 196 F. Supp. 2d 1250, 1256 (S.D. Fla. 2002) (assuming one to two months could establish causation); *Castillo v. Roche Labs., Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012) (one month satisfies causation while three-month interval does not); *Donnellon v. Freuhauf*

*Corp.*, 794 F.2d 598 (11th Cir. 1986) (one month between protected activity and discharge was sufficient to establish causation).

Burden has also demonstrated prima facie causation between his statements to the Confidential Inquiry and his termination. According to Burden's deposition, Burden stated that upon Cason's return to duty from suspension, she specifically told Burden that she knew what Burden had told the Confidential Inquiry and commented that Burden "shouldn't have said those things." D.E. 108-2 at 31:14-19. The record thus indicates that Cason was aware of Burden's protected activity and that she asked Patterson to terminate Burden, which he did the very next day. Under a "cat's paw" theory, these facts establish prima facie causation.

### c. Legitimate Reasons and Pretext

Defendant has described a number of incidents contributing to Cason's recommending of the termination of Burden's employment, all of which lead up to its proffered overarching legitimate reason for termination: Cason had lost confidence in Burden as a second-in-command of the OLPD. D.E. 107, ¶¶ 112, 114. Defendant, however, supports these incidents and this reason with only an affidavit provided by Cason, and Plaintiffs dispute the facts surrounding Cason's proffered incidents.[13] D.E. 115, ¶ 114.

---

[13]The Court nonetheless notes that Plaintiffs' citations to the record reference portions of Burden's deposition that have nothing to do with Cason's proffered reasons for losing confidence. *See, e.g.*, D.E. 116-1 at 22-25 (discussing Burden's salary and employment goals). Thus, it cannot be fairly said that Plaintiff has properly disputed Defendant's facts concerning Cason's reasons for wanting to remove Burden. Nevertheless, for this Court to grant summary judgment in favor of Defendant, it must satisfy itself that the evidence on the record supports the undisputed material facts that the movant has proposed. *Reese,* 527 F.3d at 1269. For the reasons set forth above, the Court cannot do that with respect to this "legitimate reason" that is proffered.

When issues of motivation or fact turn on the credibility of an affiant, summary judgment is particularly inappropriate, as the court must not weigh credibility. *Ala. Farm Bureau*, 606 F.2d at 609; *Jones*, 683 F.3d at 1292; *see also Carlin Comm., Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1360 (11th Cir. 1986) ("[A] court should be wary of placing too much reliance on the testimony of the movant regarding facts in its exclusive knowledge in granting a motion for summary judgment . . . ."). Here, Defendant points only to Cason's affidavit in describing the events that led her to lose confidence in Burden; it provides no other evidence supporting those events, and Burden challenges Cason's version of what happened. He further notes the timing of his dismissal in relation to the report and Cason's return from suspension. Under these circumstances, an issue of material fact concerning the reason for Burden's termination exists, and the Court must deny summary judgment to Defendant.

**3. Robinson's FWA Claims**

a. Protected Activities

Robinson made the following statements to the Confidential Inquiry[14]: (i) Cason ordered Robinson to pay out-of-pocket for a traffic ticket received by a former city official; (ii) Cason's secretary had been "digging" around Robinson's office and may have removed files; (iii) Robinson had observed Tamika Miller crying in Cason's office and escorted Miller away; (iv) Cason had ordered Robinson to work on Christmas Eve and Christmas day so that another officer could be with his family; (v) Officer Gonzalez, an officer under Robinson's supervision, had been subject to complaints for being abusive towards others. D.E. 107, ¶¶ 20-38; D.E. 115, ¶¶ 20-38.

---

[14]Plaintiffs "dispute" only paragraph 36 of Defendant's Statement of Material Facts concerning Robinson's Inquiry statements but fail to elaborate at all or to cite to anything to support their dispute. D.E. 115, ¶ 36.

Each of the first four statements directly addresses Cason and her management of the OLPD. Robinson's deposition testimony about Officer Gonzalez also makes clear that although, on paper, Robinson supervised Gonzalez, Gonzalez reported directly to and was protected by Cason, despite the complaints against Gonzalez. D.E. 116-3 at 119:8-11, 120:9-12. Under *Rosa*, a reasonable jury could draw from these statements an inference of a continuous pattern of managerial abuses constituting gross mismanagement, misfeasance, or malfeasance on the part of Chief Cason. Therefore, a triable issue of fact exists as to whether these statements amount to a protected activity. As a result, summary judgment would be inappropriate. *See* 915 So. 2d at 212. For purposes of the burden-shifting analysis, Robinson has established a prima facie case of protected activity.

Defendant also objects that the FWA precludes Robinson's statement about paying the traffic ticket because he initially had agreed to look into removing the ticket from the system and thus had "intentionally participated" in the violation for which whistle-blower protection is being sought. D.E. 106 at 9; *see* Fla. Stat. § 112.3187(7). Defendant fails to distinguish, however, between the acts of actually "fixing" the ticket in the system and the inference of managerial abuse that could be drawn from Cason's ordering of Robinson to reimburse an individual out-of-pocket for a traffic ticket that had not been "fixed."

b. Adverse Action

Next, the Court considers whether Robinson has made a prima facie case of suffering adverse employment action. Robinson's initial Complaint indicates that after his participation in the Confidential Inquiry, he was stripped of his title, assigned to a unit slated for disbandment, physically relocated to offices outside the OLPD and provided no logistical support, locked out of his office for a "prolonged period," and placed on night patrol. D.E. 27, ¶¶ 66-69. All of these actions took place

-30-

before Robinson took leave under the FMLA (discussed below).  D.E. 27, ¶¶ 73-74.  Robinson was terminated on August 25, 2011. D.E. 107, ¶ 134.

Plaintiffs point out that Defendant's Motion for Summary Judgment has failed to address these non-termination adverse actions taken against Robinson.  D.E. 114 at 16.  The FWA defines "adverse personnel action" to include, among other things, "the . . . transfer . . .of any employee . . . or any other adverse action taken against an employee within the terms and conditions of employment."  Fla. Stat. § 112.3187(3)(c).  Given the liberal construction of the FWA and the absence of any contention by Defendant that these actions against Robinson do not amount to an adverse personnel action, Robinson has met his burden of establishing that he suffered an adverse personnel action both in termination and non-termination respects.

c. Causation, Legitimate Reasons, and Pretext

Like Burden, Robinson alleges that Cason told him that she was aware of what Robinson had reported to the Confidential Inquiry. D.E. 116-3 at 132:15-16.  This contention establishes causation for the non-termination adverse actions he suffered.  However, Robinson cannot establish a prima facie case for causation for his termination under the FWA.  Not only did his termination occur more than seven months after his protected activity, but Robinson has pointed to no evidence that Finnie, the City Manager at the time Robinson was terminated, was aware of the information he provided to the Confidential Inquiry or that Cason influenced Finnie under a "cat's paw" theory to terminate him in retaliation for that information.

Because Defendant has not addressed the non-termination adverse action, and thus not provided legitimate reasons for those actions, Defendant is not entitled to summary judgment on those claims.  Defendant is entitled to summary judgment, however, to the extent that Robinson

-31-

claims that he was terminated in retaliation for protected activity under the FWA.

### 3. Lazier's FWA Claims

Unlike Burden and Robinson, Lazier fails to make a prima facie case for retaliation under the FWA. Specifically, Lazier fails to establish that she engaged in a protected activity. It is undisputed that Lazier made the following three statements to the Confidential Inquiry: (i) a Corporal Faulkner, who had fallen asleep on night shift and was then transferred to the day shift, was not otherwise punished for falling asleep on duty, but Lazier was ordered to replace him on the night shift and chose not to do so; (ii) an Officer Holborow drove two intoxicated women home in his personal car; and (iii) Officer Gonzalez was rude and should have been disciplined. D.E. 107, ¶¶ 39-49.

The FWA, however, requires that a protected disclosure provide information on "[a]ny act or suspected act . . . committed by an employee or agent . . . ." Fla. Stat. § 112.3187(5)(b). Unlike in the cases of Burden and Robinson, Lazier does not accuse Cason or any other city employee specifically of being responsible for these managerial problems, nor do Plaintiffs point to any facts from which a reasonable jury could infer that Cason or another specific individual was responsible. In fact, Lazier specifically testified in her deposition that she was not complaining about Cason during the Confidential Inquiry. *See* D.E. 116-5 at 101:16-21 ("Q: You weren't complaining about Chief Cason's conduct there? Correct? A: No. Q: It was related to general officer morale? A: Exactly."); 138:4-8 (Q: Okay. And you agree with me that you didn't say anything bad about [Cason] in the Inquiry? Correct? A: No, I didn't. I didn't say anything at all bad about her."). Similarly, Lazier testified that her statements to the inquiry were intended to improve employee morale generally, but not to accuse anyone specifically of mismanagement, misfeasance, or

-32-

malfeasance.  *See* D.E. 116-5 at 106:15-107:24.  Accordingly, Lazier has failed to make a prima

facie case for whistle-blower retaliation, and Defendant is entitled to summary judgment on Lazier's

FWA claims.

**4. Miller's FWA Claims**

    a. Protected Activities

Miller asserts that she made four[15] protected statements to the Confidential Inquiry: (i) two

officers engaged in horseplay with a taser that resulted in the calling of medics, but neither officer

was disciplined by Cason; (ii) Cason ordered an officer to drive his patrol car to purchase alcohol

for another officer's baby shower; (iii) Cason assigned the work of another officer to be completed

at home by Miller while she was on maternity leave; and (iv) Cason refused to punish an officer who

had stolen Miller's laptop computer.  D.E. 107, ¶¶ 50-64; D.E. 116-7 at 86-120.  Each of these four

statements directly addresses Cason and her management decisions.  Under *Rosa*, a reasonable jury

could draw from these statements a continuous pattern of managerial abuses constituting gross

mismanagement, misfeasance, or malfeasance on the part of Cason.  As such, a triable issue of fact

exists as to whether these statements amount to a protected activity, and summary judgment would

be inappropriate.  *See* 915 So. 2d at 212.  For purposes of the burden-shifting analysis, Miller has

established a prima facie case of protected activity under the FWA.

    b. Adverse Action

---

[15]In Defendant's Statement of Material Facts, Miller's being asked to perform the work of
another and to do so on maternity leave are treated as two separate "statements," D.E. 107, ¶¶ 56-
59, but essentially are the same complaint and are acknowledged as such in Miller's deposition.
D.E. 116-7 at 106:9.

It is undisputed[16] that Miller was voluntarily transferred from the OLPD to the Department of Code Enforcement in June 2011 and that Miller was promoted to Director of the Department of Code Enforcement on February 27, 2012.  D.E. 107, ¶¶ 161, 167; D.E. 115, ¶¶ 161, 167.  Plaintiffs maintain, however, that in the space of time between Miller's protected disclosures in January or February 2011 and her voluntary transfer in June 2011, Miller was subject to various non-termination adverse personnel actions, including unfavorable assignments, restrictions from earning overtime, and relocation to a building without adequate logistical support. *See, e.g.*, D.E. 27, ¶¶ 123 -125; D.E. 116-7 at 134:16-17.

Plaintiffs point out that Defendant's Motion for Summary Judgment fails to address these adverse actions taken against Miller.  D.E. 114 at 16.  The FWA defines "adverse personnel action" to include, among other things, "the . . . transfer . . .of any employee . . . or any other adverse action taken against an employee within the terms and conditions of employment."  Fla. Stat. § 112.3187(3)(c).  In light of the liberal construction due the FWA and the absence of any contention by Defendant that these actions against Miller do not amount to an adverse personnel action, Miller has met her burden of establishing that she suffered non-termination adverse personnel action prior to her voluntary transfer in June 2011.

### c. Causation

Like Burden and Robinson, Miller has alleged that Cason told her that she was aware of what Miller had told the Confidential Inquiry.  D.E. 116-7 at 115:21-116:15.  This establishes causation

---

[16]Plaintiffs' only objections to Defendant's facts surrounding Miller's voluntary transfer relate to the discovery and external document objections discussed previously.  D.E. 115, ¶¶ 161, 164.  Plaintiffs point to no other facts on the record that would contradict Defendant's characterization of these facts.

for the non-termination adverse actions she suffered.  Because Defendant has not provided legitimate reasons for the non-termination adverse actions that took place prior to June 2011, Defendant is not entitled to summary judgment on Miller's FWA claims.

## 5. Riley's FWA Claims

Riley claims three protected activities under the FWA: (i) Riley informed Patterson of an issue involving a code-enforcement officer and a citizen and his opinion that the FBI should be called in to investigate; (ii) Riley advised Cason about two internal affairs investigations; and (iii) Riley was instructed to allow the Mayor's son to complete a late job application.  None of these activities qualify for protection under the FWA.

The first statement, to the extent that it may have disclosed a violation of law, was made only verbally to Patterson.  D.E. 107, ¶ 79.  Since Plaintiffs have pointed to no facts indicating that Riley was instructed to participate in a relevant investigation or inquiry, this complaint was required to be in writing.  *See* Fla. Stat. § 112.3187(7); *Walker v. Fla. Dep't of Veterans' Affairs*, 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006).

The second statement also fails to qualify as a protected activity.  As was the case with Burden's informing of Patterson about the FBI investigation, Riley was just briefing Cason about the status of the two investigations, not reporting any act or violation or suspected act or violation that would be protected by the FWA.  Finally, regarding the third activity, although Riley was instructed to participate in something that, for the sake of argument only, could be construed as misfeasance, he never disclosed that misfeasance to anyone as required by the statute.  *See* Fla. Stat. § 112.3187(4)(a).  Instead, Riley objected to Ruiz-Nicolas only when she instructed him to allow the application, but he did not disclose the conduct to anyone after the fact.  Moreover, even assuming

Riley's objections amounted to sufficient "disclosure," they too were not made in writing as is required by the FWA.  D.E. 107, ¶ 79; *see* Fla. Stat. § 112.3187(7).  Accordingly, Defendant is entitled to summary judgment on Riley's FWA claims.

**6. Ruiz-Nicolas's FWA Claims**

Ruiz-Nicolas asserts that she engaged in four protected activities: (i) she told Patterson that the city was providing three city employees with life-insurance benefits inconsistent with the city's standard benefits package; (ii) she told Patterson that the Mayor had pressured her into extending the application period for police officers; (iii) she told Patterson that she had been instructed by the CSB to hire an individual whom she believed was unqualified; and (iv) she participated in conducting the Confidential Inquiry and preparing the Inquiry report.  D.E. 107, ¶¶ 65-78; D.E. 115, ¶¶ 65-78.  The first three of these activities do not constitute protected activity because Ruiz-Nicolas did not provide her complaints in a written form, and they were not made in response to her participation in any investigation.  D.E. 107, ¶¶ 67, 69, 72; *see Walker*, 925 So. 2d at 1150.

As for Ruiz-Nicolas's participation in the Confidential Inquiry and preparation of the Inquiry report, Ruiz-Nicolas's claim fails to demonstrate a causal link between her preparation of the report in January to February 2011 and her termination by Finnie on June 28, 2011.  The time span precludes establishing prima facie causation by temporal proximity.  And, unlike in the case of Burden and Robinson, Plaintiffs have pointed to no evidence on the record[17] — and the Court can find none — that raises a question of material fact regarding whether Finnie knew of Ruiz-Nicolas's

---

[17]Plaintiffs' only objections to Defendant's facts surrounding Ruiz-Nicolas's termination relate to the discovery and external document objections previously discussed.  D.E. 115, ¶¶ 149-160.  Plaintiffs point to no other facts on the record regarding her termination and fail to attach any relevant evidence (such as Ruiz-Nicolas's complete deposition) to their own opposition memorandum.  *See* D.E. 116.

protected activity or whether any other individual was aware of Ruiz-Nicolas's protected activity and instructed Finnie to terminate her under a "cat's paw" theory.  Accordingly, Defendant is entitled to summary judgment on Ruiz-Nicolas's FWA claims.

## B. Family and Medical Leave Act Claims

Plaintiffs Robinson and Lazier also claim that they were terminated in retaliation for their use of the self-care provisions of the FMLA, 29 U.S.C. § 2612(a)(1)(D).  The FMLA provides that a qualified employee is entitled in any twelve-month period to take a maximum of twelve weeks' leave and return to the same or an equivalent position.  29 U.S.C. §§ 2612(a)(1), 2614(a)(1); *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999) ("The statute provides for only 12 weeks of leave. . . . The statute does not suggest that the 12 week entitlement may be extended." (citations omitted)).

As in the case of FWA and Title VII claims, FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001).[18]  A plaintiff must establish that (1) he engaged in a protected activity, (2) he suffered an adverse employment decision, and (3) the adverse action was causally linked to the protected activity.  *Id.*

---

[18]Defendant asserts that Plaintiffs "face the increased burden of showing that the City's actions 'were motivated by an impermissible retaliatory or discriminatory animus.'"  D.E. 106 at 16.  Defendant is correct that Plaintiffs have an "increased burden" to prove "impermissible animus" in an FMLA *retaliation* claim as opposed to an *interference* claim.  To the extent that Defendant suggests "impermissible animus" is an additional factor, beyond the *McDonnell Douglas* framework, that is required in FMLA cases, the Court disagrees.  The *McDonnell Douglas* framework is *how* a plaintiff proves "impermissible animus" in the absence of direct evidence of the employer's intent.  *See Lee v. U.S. Steel Corp.*, 450 F App'x 834, 838 (11th Cir. 2012); *Strickland*, 293 F.3d at 1206-07.

If a prima facie case is established, an employer must proffer legitimate reasons for the termination. *Bently v. Orange County, Fla.*, 445 F. App'x 306, 310 (11th Cir. 2011); *see Davis-Dietz v. Sears, Roebuck & Co.*, 284 F. App'x 626, 630 (11th Cir. 2008) (citing *McDonnell Douglas*, 411 U.S. at 802-03). If an employer does so, the burden shifts to the plaintiff to prove that the employer's reasons are pretext for retaliation. *See Davis-Dietz*, 284 F. App'x at 630 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). To survive summary judgment, a "plaintiff must present significant and probative evidence of pretext." *Id.* (citing *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)). The evidence must establish a question of pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005)). To demonstrate pretext, plaintiffs must show that a proffered reason is false and that the true reason for the termination was unlawful. *Lee v. U.S. Steel Corp.*, 450 F App'x 834, 839 (11th Cir. 2012); *Brooks*, 446 F.3d at 1160.

**1. Robinson's FMLA Claim**

At the outset, Plaintiff has established that a disputed issue of material fact exists concerning whether Robinson was engaged in a protected activity. While it is undisputed that Robinson was due to return to work on August 15, 2011, after his twelve-week leave period had expired, D.E. 107, ¶ 93; D.E. 115, ¶ 93, Defendant asserts that Robinson did not return to work. D.E. 107, ¶93. Robinson, on the other hand, claims that he was instructed to report to the City Manager's office on August 15 and did so. D.E. 115, ¶ 93; D.E. 116-4 at 209:23-210:11. This dispute alone raises a

-38-

question of fact regarding whether Robinson returned to work in compliance with the terms of his FMLA leave. Consequently, Defendant is not entitled to summary judgment on Robinson's FMLA claim. [19]

## 2. Lazier's FMLA Claim

Lazier is unable to sustain her claim for retaliation under the FMLA because she cannot demonstrate a dispute of material fact over whether the City's reasons for terminating her are pretext. Assuming, for the sake of argument, that Lazier has satisfied the burden of establishing a prima facie case of retaliation under the FMLA, the City has proffered several legitimate, non-FMLA reasons for Lazier's termination. Specifically, the City states that an Internal Affairs investigation found that Lazier compromised OLPD Internal Affairs files, was insubordinate, and exhibited conduct unbecoming a police officer; that Lazier appeared on television ridiculing the City in violation of the City's policies; and that Lazier gave a city-issued firearm to an unqualified civilian employee. D.E. 107, ¶¶ 142-148.

At the outset, Plaintiffs do not dispute[20] that Lazier gave a firearm to an unqualified civilian employee. D.E. 115, ¶146. In fact, Lazier's own testimony confirms that she gave her weapon to a civilian human-resources employee. D.E. 116-6 at 54:16-18. This alone is a sufficient justification for Lazier's termination. Because Plaintiffs have not identified a dispute of material fact regarding

---

[19]There are also likely disputed material facts regarding Robinson's subsequent physical examination and absence from work, as well as regarding the events surrounding Robinson's FDLE certification. D.E. 115, ¶¶ 92-97. Because the Court disposes of the summary-judgment motion on the return-to-work issue, however, the Court does not analyze these other disputes or consider whether they are even applicable to an FMLA claim of this nature.

[20]Plaintiffs dispute this fact only by raising the previously discussed affidavit and external document objections, but point to no specific evidence on the record.

the veracity of the firearm incident, Plaintiffs cannot establish this reason as pretext, and Defendant is entitled to summary judgment on Lazier's FMLA claim.

Further, Plaintiffs have failed to demonstrate that the other two justifications for Lazier's termination are false. Plaintiffs contend that the Internal Affairs investigation, referenced as IA-0005, was conducted in violation of the requirements of Florida's "Law Enforcement Officers' Bill of Rights," Fla. Stat. §§ 112.532-.534. D.E. 114 at 23-24. Plaintiffs, however, do not dispute the accuracy of the investigation's findings, namely, that Lazier disobeyed a direct order and permitted an unauthorized individual access to the Internal Affairs spaces. *See* D.E. 116-5 at 47:10-15, 48:8-16. It was upon these facts that Finnie relied when making his termination decision, after independently reviewing the file. D.E. 107, ¶ 144. Because no factual dispute exists over Lazier's insubordination, Plaintiffs cannot establish this reason as pretext.

Additionally, Plaintiffs have produced an August 23, 2011, letter from Barrett informing Lazier that Internal Affairs investigation IA-0014 had been opened and sustained against Lazier for contacting WSVN Channel 7 News. D.E. 116-11. Plaintiffs contend that this demonstrates pretext regarding the television-appearance rationale because the letter says that the investigation was opened on May 24, 2011, more than two months before Lazier actually appeared on television on August 16, 2011. While the Court finds the discrepancy curious, it is nonetheless unavailing to Plaintiffs because they have failed to dispute, and the record confirms, the material fact that Lazier

appeared on television without prior approval while still employed by the City.[21]  D.E. 116-5 at 129:6-130:22.  Thus, Plaintiffs cannot establish this reason as pretext, either.

Finally, in addition to not demonstrating a dispute of material fact regarding the falsity of Defendant's reasons for terminating Lazier's employment, Plaintiffs also fail to demonstrate that the true reason for the City's action was unlawful retaliation or even that retaliation more likely than not motivated the City's termination decision.

Specifically, Lazier does not point to any fact that indicates that the City's reasons were a pretext for retaliation under the FMLA.  In her deposition, Lazier makes only conclusory allegations of FMLA retaliation and blends them with allegations of retaliation for, among other things, participating in the Confidential Inquiry.  *See, e.g.*, D.E. 116-6 at 175:16-177:24.  This is insufficient to raise an issue of material fact as to pretext for FMLA retaliation.  *See Bently*, 445 F. App'x at 310 ("Conclusory allegations or unsupported assertions of discrimination 'are not sufficient to raise an inference of pretext . . . .'" (omission in original) (quoting *Mayfield*, 101 F.3d at 1376-77)); *see also Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1244 n.3 (11th Cir. 2010) (noting that showing pretext alone is insufficient and that a plaintiff must show an employer's reasons were "pretext *for discrimination*"(emphasis in original)).  Accordingly, Defendant is entitled to summary judgment on Lazier's FMLA claim.

---

[21]Plaintiffs also contend in their brief that Lazier had been constructively terminated prior to her August 16, 2011, television appearance, and thus the City's regulations did not apply.  This contention is problematic for several reasons.  Although Plaintiffs' brief claims that the City ceased paying Lazier in the first week of August, D.E. 114 at 24, Lazier herself only mentions not being paid on August 19, after her television appearance.  D.E. 116-6 at 16:3-18:11.  Further, Lazier herself says that she was still an employee of the city when she made her appearance. D.E. 116-5 at 129:6-9.  Accordingly, the record does not support the contention that Lazier was constructively terminated before August 16, 2011.

## C. Robinson's Title VII Claim

Robinson also asserts a claim under Title VII for failing to promote him to "acting" Deputy Police Chief following the termination of Burden in March 2011.[22] To make a prima facie case for discrimination in a failure-to-promote case under Title VII, "a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1539 n.11 (11th Cir. 1997)). Robinson, a white male, alleges that he was discriminated against in favor of Barrett, a black female, who did not possess the educational requirements necessary for the position. D.E. 27, ¶¶ 117-118. Defendant maintains that educational requirements do not apply to "acting" positions and that Barrett was appointed on the basis of her seniority. D.E. 107, ¶103.

Upon review of the record, the Court finds that a question of material fact exists concerning whether there is an educational requirement for "acting" supervisory positions in the OLPD. Both sides agree that permanent supervisory positions do have a minimum educational requirement. D.E. 114 at 26; D.E. 107, ¶ 104. Defendant has not disputed that Robinson meets these educational requirements. Both sides similarly appear to acknowledge that Barrett lacks the educational prerequisites needed for a permanent supervisory position. D.E. 107, ¶ 105. Thus, Plaintiffs seem

---

[22]Robinson's Complaint asserts that he should have been promoted to Deputy Police Chief. D.E. 27, ¶ 114. All of Robinson's arguments, though, concern why he should have been chosen instead of Barrett, who filled the position in an "acting" capacity only. D.E 107, ¶ 103. Robinson does not make any complaints about the selection of Antonio Sanchez, who was placed in the position permanently in January 2012. D.E. 107, ¶ 106. Accordingly, the Court construes Robinson's Title VII complaint to focus solely on the selection of the "acting" Deputy Police Chief.

-42-

to suggest that the same educational requirements applicable to the permanent position apply to the acting position, while the City contends that they do not.

To support its view of the policy, Defendant has offered only the affidavit of Luznilda Natal, who holds the position of "Human Resources Specialist / Safety & Risk" with the City.  D.E. 108-13, ¶ 2.  In the affidavit, Natal conclusorily states that the educational requirements "do not apply to an individual who is appointed to an 'acting' position."  *Id.* ¶ 4.  Although Natal attests that she has personal knowledge, she has set forth absolutely no basis in the affidavit for her conclusions about the applicability of educational requirements to temporary positions.  Accordingly, to establish the existence or nonexistence of a policy concerning the applicability of educational requirements to "acting" positions, the Court would be required to improperly weigh the credibility of Natal's affidavit against Plaintiffs' denials.  Unless the actual policy can be established as a fact beyond dispute, the Court cannot properly analyze the qualifications aspects of a Title VII prima facie case.  Accordingly, Defendant is not entitled to summary judgment on Robinson's Title VII claim.

**D. Lazier's COBRA Claim**

Finally, Lazier presents a claim under the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), asserting that Defendant failed to comply with the notice requirements of 29 U.S.C. § 1166(a)(4)(A) following her termination.  However, Lazier does not dispute that in her termination letter, dated August 25, 2011, Finnie advised her that her benefits would cease after August 31, 2011, and that she would have the option to continue coverage through COBRA. D.E.115, ¶ 108.  Further, Lazier does not dispute that Coventry Health Care of Florida, the City's health insurance provider, mailed a letter to her regarding the procedure for obtaining her COBRA benefits.  D.E.115, ¶ 111.

The crux of Plaintiffs' attempt to raise a material dispute of fact regarding notice rests on the assertion that Lazier never received letters from Finnie or Coventry.  In Lazier's deposition testimony, she claimed to never have received a letter from Finnie.  D.E. 116-5 at 78:1-25.  The fact that Finnie's letter went unclaimed is confirmed by a print-out from the United States Postal Service noting that the letter had been processed on August 27, 2011, and was unclaimed as of September 13, 2011.  D.E. 108-19 at 14.

The Eleventh Circuit has apparently never addressed the issue of whether COBRA's notice requirements are satisfied if an employer mails a notice but it is never received.  Other courts that have confronted the issue find that an employer's duty is discharged when it in good faith mails the notice via certified or first class mail to the employee's last known address.  *See, e.g.*, *Hearst v. Progressive Foam Techs., Inc.,* 641 F.3d 276, 281 (8th Cir. 2011); *Holmes v. Scarlet Oaks Ret. Cmty.*, 277 F. Supp. 2d 829, 834-35 (S.D. Ohio 2003) (unclaimed certified mail sufficient); *Myers v. King's Daughters Clinic*, 912 F. Supp. 233, 236 (W.D. Tex. 1996); *Truesdale v. Pac. Holding Co./Hay Adams Div.*, 778 F. Supp. 77, 81-82 (D.D.C 1991).  Here, Finnie's letter was sent via certified mail to Lazier's last known address.[24]  Plaintiffs have pointed to no evidence of bad faith on the part of Finnie or anyone else concerning the COBRA notice.  Therefore, as a matter of law, Defendant complied with its duty under COBRA and is entitled to summary judgment on Lazier's COBRA claim.

Plaintiffs also attempt to raise a number of other issues regarding Lazier's health benefits, but none of them are relevant to the underlying COBRA notice claim.  Plaintiffs argue in their

---

[24]This is, in fact, her current address, as confirmed by Lazier in her deposition.  D.E. 116-5 at 78:4-7.

Response Brief that there is a dispute concerning the actual date of Lazier's termination.  D.E. 114 at 28.  But Plaintiffs do not point to any facts in the record that support the disputed date of termination.  D.E. 115, ¶ 147; *see* Note 21, *supra*. (finding insufficient evidence in the record to support Lazier's contention of a constructive termination prior to her actual termination). Regardless, even assuming, *arguendo*, that Lazier was terminated at the beginning of August, Finnie's August 25 letter falls within the notice time frame provided by the statute.[25]

Plaintiffs also appear to claim in their Response Brief that Lazier's benefits and pay were impermissibly stopped at the beginning of August before her employment was terminated. D.E. 114 at 27-28.  Such claims are irrelevant to the COBRA notice claim.  They would probably be more appropriately characterized as claims under the Employee Retirement Income Security Act ("ERISA") or Fair Labor Standards Act ("FLSA"), but regardless, were not pleaded by Plaintiffs. It is improper for Plaintiffs to raise new claims in their response brief to a summary judgment motion. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

Finally, Plaintiffs dispute the City's assertion that it extended Lazier's health benefits through September 30, 2011.  D.E. 107, ¶ 109.  Lazier claims that she learned that her benefits ceased on August 31, 2011, during an August or September 2011 doctor's visit.  D.E. 115, ¶ 109 (citing D.E. 116-5 at 119).  Nevertheless, whether the City chose to extend Lazier's benefits through September 30, 2011, is immaterial to the issue of whether the City provided proper notice under COBRA.

---

[25] The statute provides that an employer must notify a plan administrator within 30 days, and a qualified beneficiary within 14 days after that.  29 U.S.C. § 1166(a)(2), (c).  In cases of termination, such as Lazier's, the covered employee is considered a qualifying beneficiary. *Id.* § 1167(3)(B).

### *V. CONCLUSION*

Accordingly, for the foregoing reasons, the Court **DENIES IN PART and GRANTS IN PART** Defendant City of Opa Locka's Motion for Summary Judgment [D.E. 106]. The Motion is **DENIED** with respect to Counts II, VI, VII, VIII, and X. The Motion is **GRANTED** with respect to Counts IV, XII, XIII, XIV and XVI. Further the Motion is **GRANTED** with respect to Burden's claim for whistle-blower protection on statements he made to Patterson concerning the FBI investigation and Robinson's claim that he was terminated in retaliation for his statements to the Confidential Inquiry.

**DONE** and **ORDERED** at Fort Lauderdale, Florida this 7th day of October 2012.

_____
ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record

-46-